# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

TAKI KASTANIS and KPOKOS, INC., an )
Illinois corporation d/b/a/ Yolk Café, )
)
    Plaintiffs, )
) No. 10 C 3561
vs. )
) Jeffrey T. Gilbert
EGGSTACY LLC, and Illinois limited ) Magistrate Judge
liability company, and NEW YOLK NEW )
YOLK LLC, an Illinois limited liability )
company, )
)
    Defendants. )

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiffs' motion for preliminary injunction [Dkt.#4].[1] For the reasons set forth below, the motion for preliminary injunction is denied.

## BACKGROUND

Plaintiffs Taki Kastanis and Kpokos Inc. own three restaurants that operate under the name Yolk in and around downtown Chicago, Illinois.[2] Kastanis opened his first Yolk in November 2006. Transcript of 9/15/10 Preliminary Injunction Hearing at 58 (hereinafter referred to as "Hearing Tr."). All three restaurants serve breakfast and lunch. On March 22, 2007, Kastanis registered the word "yolk" with the United States Patent and Trademark Office

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c), the parties executed a Limited Consent to Exercise of Jurisdiction by a United States Magistrate Judge on July 9, 2010, in which the parties voluntarily consented to have this Court exercise the court's jurisdiction to conduct all proceedings, including entry of final judgment, as to Plaintiffs' motion for a preliminary injunction.

[2] Kastanis testified at the hearing that Yolk currently has three locations open in and around downtown Chicago and that Plaintiffs have started construction on a fourth location in downtown Chicago. Hearing Tr. at 72.

("USPTO"), Reg. No. 3,347,771, Serial No. 77137603. Pls' Motion [Dkt.#4], Group Ex. A. Kastanis also registered the "yolk" word design utilized by Yolk with the USPTO, Reg. No. 3,347,784, Serial No. 77137839. *Id.*

Eggstacy is a restaurant located in Oakbrook, Illinois that also serves breakfast and lunch. Hearing Tr. at 11. Defendants also operate an Eggstacy restaurant in Woodridge, Illinois. *Id.* Defendants Eggstacy LLC ("Eggstacy") and New Yolk New Yolk LLC ("New Yolk New Yolk") opened the restaurant New Yolk New Yolk in Hinsdale, Illinois on March 31, 2010. Defs' Resp. [Dkt.#26], at 1. According to Defendants, New Yolk New Yolk is a New York-themed restaurant that serves breakfast and lunch and includes in its menu many of the same dishes that Eggstacy has on its menu. *Id.*; Hearing Tr. at 21, 24, 48.

Plaintiffs have sued defendants Eggstacy and New Yolk New Yolk for trademark infringement, false designation of origin and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a). They also have asserted parallel state law claims for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, and the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1. Plaintiffs argue that Defendants' use of the name New Yolk New Yolk for their restaurant infringes on Plaintiffs' trademark Yolk. Plaintiffs filed a motion for preliminary injunction seeking to bar Defendants from operating their restaurant under the name New Yolk New Yolk. The parties have submitted extensive briefing on the preliminary injunction motion, and the Court conducted a hearing on September 15, 2010 at which Taki Kastanis, owner of Yolk, and Peter Verros, owner of New Yolk New Yolk and Eggstacy, testified. This matter is ripe for decision.

## ANALYSIS

A party seeking a preliminary injunction must demonstrate that: (1) it has some likelihood of success on the merits; (2) no adequate remedy at law exists; and (3) it will suffer irreparable harm if the injunction is not granted. *Girl Scouts of Manitou Council Inc. v. Girl Scouts of the United States of America Inc.*, 549 F.3d 1079, 1085 (7th Cir. 2008). In order to succeed on a motion for preliminary injunction, the movant must show that it has a "better than negligible" chance of success on the merits.[3] *Id.* at 1096 (citing *Ty Inc. v. Jones Group Inc.*, 237 F.3d 891, 897 (7th Cir. 2001)). If the moving party satisfies these three elements, the court then must consider any irreparable harm an injunction would cause the nonmoving party and any consequences to the public from denying or granting the injunction. *Promatek Indus. v. Equitrac Corp.*, 300 F.3d 808, 811 (7th Cir. 2002) (citing *Ty*, 237 F.3d at 895). These considerations are weighed applying a "sliding scale approach" in which "the more likely the plaintiff's chance of success on the merits, the less the balance of harms need weigh in its favor." *Ty*, 237 F.3d at 895-896.

---

[3] The Seventh Circuit has utilized more than one standard for determining a plaintiff's likelihood of success on the merits in the context of a motion for preliminary injunction. *See* Magistrate Judge Morton Denlow, *The Motion for a Preliminary Injunction: Time for a Uniform Federal Standard*, 22 Rev. Litig. 495, 531 (2003). The Seventh Circuit has required a "likelihood of success on the merits" in *Eli Lilly & Co. v. Natural Answers Inc.*, 233 F.3d 456, 461 (7th Cir. 2000) and, in *Barbecue Marx Inc. v. 551 Ogden Inc.*, 235 F.3d 1041 (7th Cir. 2000), the Seventh Circuit required that a plaintiff show a "greater than negligible chance of prevailing on the merits of the underlying infringement claim." 235 F.3d at 1043. In this case, the Court applies the less demanding standard of *Barbecue Marx*.

3

## I. Plaintiffs' Likelihood of Success on the Merits

The Lanham Act provides, in relevant part, that a plaintiff may bring a civil action against:

> [a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin . . . which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activity by another person.

15 U.S.C. 1125(a). In order to succeed on a trademark infringement claim, Plaintiffs must demonstrate that: (1) the Yolk marks are protectable; (2) Defendants have used the marks in commerce; and (3) their use of the term is likely to cause confusion. *Ty*, 237 F.3d at 897.

### A. Whether The Yolk Marks Are Protectable

In order to determine whether Defendants have violated the Lanham Act, the Court must first determine whether the word "yolk" is a protectable trademark. The law classifies trademarks into five categories of increasing distinctiveness: generic, descriptive, suggestive, arbitrary, and fanciful. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 767-68 (1992); *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 638 (7th Cir. 2001).

In general, the level of trademark protection corresponds to the distinctiveness of the mark. *Id.* A generic term is one that is commonly used and does not identify any particular source. *Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 936 (7th Cir. 1986). A generic term is not entitled to any trademark protection. *Id.* A descriptive mark is one that "describes the ingredients, qualities, or characteristics of an article of trade or a service" and, generally, it is not protected as a trademark because a merely descriptive mark is a "'poor means

of distinguishing one source of services from another.'" *Id.* (quoting *M.B.H. Enters. v. WOKY, Inc.*, 633 F.2d 50, 54 (7th Cir.1980)). A descriptive mark may receive trademark protection, however, if it acquires secondary meaning "in the collective consciousness of the relevant community." *Mil-Mar Shoe Co. Inc. v. Shonac Corp.*, 75 F.3d 1153, 1157 (7th Cir. 1996) (citing *Gimix, Inc. v. JS & A Group, Inc.*, 699 F.2d 901, 907 (7th Cir.1983)). Finally, terms that are either suggestive, arbitrary, or fanciful automatically are entitled to trademark protection because they are inherently distinctive. *Two Pesos*, 505 U.S. at 767-68.

It is not disputed that Plaintiffs registered the name Yolk with the USPTO without proof of secondary meaning. Pls' Motion [Dkt.#4], Group Ex. A. Registration of a trademark without qualification or proof of secondary meaning creates the presumption that the mark is valid and therefore entitled to protection. *Chattanoga Mfg. Inc. v. Nike Inc.*, 140 F. Supp. 2d 917, 923 (N.D. Ill. 2001) (holding that "registration of the mark 'without proof of secondary meaning' creates the presumption that the mark is more than merely descriptive"); *see also* 15 U.S.C. § 1057(b).

Notwithstanding Plaintiffs' registration of their trademark, Defendants argue that the word "yolk" is generic and thus is unprotectable under the Lanham Act. The Court can consider several factors when determining whether a mark is generic, including the plaintiff's use, the competitor's use, dictionary definitions, media usage, testimony of persons in the trade, and consumer surveys. 2 J. Thomas McCarthy, <u>McCarthy on Trademarks and Unfair Competition §</u> <u>12:13</u> (4th ed. 2006).

A generic term is one that "serve[s] to denominate a type, a kind, a genus or a subcategory of goods." *Henry's Food Products Co., Inc. v. Tasty Snacks, Inc.*, 817 F. 2d 1303,

5

1305-06 (7th Cir. 1987). In other words, a generic mark merely specifies the type or genus of the goods or services being sold. *Id.* Thus, the relevant inquiry is: (1) what genus of services is at issue; and (2) whether the relevant public uses that term primarily to refer to that genus of service. *See Lettuce Entertain You Enterprises Inc. v. Leila Sophia AR LLC*, 703 F. Supp. 2d 777, 784 (N.D. Ill. 2010). Plaintiffs are using the trademarked term "Yolk" as the name for their restaurants. Although Plaintiffs' restaurants sell dishes in which eggs and egg yolks are used as ingredients, they do not sell eggs or yolks in isolation. The genus of services provided by Plaintiffs is not selling eggs or yolks but rather providing restaurant services, and it is not disputed that Plaintiffs' Yolk marks are registered for restaurant services. Pls' Motion [Dkt.#4], Group Ex. A. Therefore, the relevant inquiry is whether the word "yolk" is a generic term for the kind of breakfast-themed restaurant services offered by Plaintiffs.

Plaintiffs argue that the general public associates the word "yolk" with eggs, specifically the middle of an egg and not restaurant services. Pls' Memorandum [Dkt. #11], at 4. We agree. The word "yolk" is a generic term for the yellow center of an egg. Indeed, both parties provide similar dictionary cites for the definition of "yolk" as the yellow substance of an egg that is surrounded by a white substance. *See* Defs' Resp. [Dkt.#26], Ex. D.; Pls' Reply [Dkt.#30], Ex. A. Yolk, however, does not sell yolks or eggs exclusively or in isolation. Rather, Yolk is a restaurant that serves breakfast and lunch, including many specialty egg-based dishes. Pls' Motion [Dkt.#4], at 3. The word "yolk" is not a generic term for a restaurant serving breakfast

food and egg based dishes. Therefore, the Court concludes that Plaintiffs have a greater than negligible chance of establishing that the word "yolk" is not a generic term in this case.[4]

The more relevant inquiry is whether the word "yolk" is descriptive or suggestive. A term is considered descriptive if it immediately conveys to purchasers information as to the ingredients, quality, characteristics, functions or other features of the product. *Henri's Food Products Co. Inc. v. Tasty Snacks Inc.*, 817 F.2d 1303, 1306 (7th Cir. 1987). The qualifier "immediately" in the definition of a "descriptive" term is important. By contrast, the distinguishing characteristic of a protectable suggestive term is that it requires some operation of the imagination on the part of the consumer to derive an understanding of the product from the term. *Money Store v. Harriscorp Finance Inc.*, 689 F.2d 666, 673 (7th Cir. 1982). "A suggestive term suggests rather than describes an ingredient or characteristic of goods and requires the observer or listener to use imagination and perception to determine the nature of the goods." *Telemed Corp. v. Tel-med, Inc.*, 588 F.2d 213, 217 (7th Cir. 1978).

Plaintiffs argue that the Yolk mark is entitled to protection because it is a suggestive term requiring a leap of imagination in order to associate the name with the product or service. In this regard, the Seventh Circuit has explained:

---

[4] Similarly, in *Lettuce Entertain You*, the district court concluded that plaintiff Lettuce Entertain You was not using the term "lettuce" to refer to a green leafy vegetable. 703 F. Supp. 2d at 784. Rather, it "use[d] the noun 'lettuce' as a pun for the verb 'let us.'" *Id.* Therefore, the court concluded that the word "lettuce" as used by Lettuce Entertain You was not generic and was entitled to trademark protection.

> [A suggestive term] suggests rather than describes an ingredient or characteristic of the goods and requires the observer or listener to use imagination and perception to determine the nature of the goods. The "'imagination'" required to link a suggestive term with the corresponding product refers to the mental process required to connect a name that is incongruous or figurative with the product (e.g., "Roach Motel" with an insect trap or "Tide" with soap)....

*Forum Corp of North America v. Forum Ltd.*, 903 F.2d 434, 443 (7th Cir. 1990) (citations omitted). Defendants, however, argue that "[u]pon hearing the work yolk, no imagination is required to immediately conjure images of breakfast and egg based dishes." Defs' Resp. [Dkt.#26], at 7. Accordingly, Defendants argue the term is not suggestive. We disagree.

The word "yolk" in this context is suggestive and not merely a descriptive term. A reasonable consumer would not immediately think of a restaurant or restaurant services when hearing the word "yolk." Rather, a consumer would need to use his or her imagination to determine the nature of the services offered by a business named Yolk. A consumer would have to use his or her imagination to appreciate or perceive the suggestion that Yolk is a place that serves meals made with eggs. Accordingly, we conclude that Plaintiffs have shown a greater than negligible chance of success on the merits with respect to their contention that the name Yolk is suggestive and not generic or merely descriptive.[5]

---

[5] Defendants argue that even if this Court were to conclude that the word "yolk" is suggestive, Plaintiffs' motion still must fail because they do not have the exclusive right to use the word "yolk." Plaintiffs argue that Peter Verros, the owner of Eggstacy and New Yolk New Yolk, incorporated Yolk Inc. on July 8, 2004 in the State of Illinois and began using that name in the development of an earlier restaurant he owned. *See* Defs' Resp. [Dkt.#26], Ex. F. It is undisputed, however, that Verros actually did business under the assumed name Solo 1530 and that Yolk Inc. no longer is in existence. Hearing Tr. at 12, 38-39. Verros testified at the hearing that he "never used the name Yolk to sell any products or restaurant services of any kind" (Hearing Tr. at 38) and never did business using the word "yolk." *Id.* at 17. The exclusive right to use a suggestive term as a trade name vests in the party who first used the term in a particular market. *Bingham v. Inter-Track Partners*, 600 N.E2d 70, 73, 234 Ill. App. 3d 615, 619 (3d Dist. 1992). It is not disputed that Defendants did not register Yolk, Inc. as a state or federal service mark, but rather simply created a corporate entity with this name through the Illinois Secretary of State

B.   **Whether Defendants Are Using "New Yolk New Yolk" In Commerce**

In order for there to be trademark infringement, Defendants must have used the mark in commerce. There is no dispute that Defendant are using name New Yolk New Yolk in commerce. Thus, the use element is established.

C.   **Whether There Is A Likelihood Of Confusion**

Plaintiffs also must show that Defendants' use of New Yolk New Yolk as the name for their restaurant is likely to cause consumer confusion with Plaintiffs' Yolk. In the Seventh Circuit, seven factors are used to evaluate whether a likelihood of confusion exists: (1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products or services; (3) the area and manner of concurrent use; (4) the degree of care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) whether any actual confusion exits; and (7) whether the defendant intends to palm off its products as those of the plaintiff. *Ty*, 237 F.3d at 897-98.

The Seventh Circuit has held that the likelihood of confusion test is "an equitable balancing test." *Barbecue Marx Inc. v. 551 Ogden Inc.*, 235 F.3d 1041, 1044 (7th Cir. 2000). Although no one factor is dispositive and courts may assign varying weights to each of the factors, three of the factors are particularly important: (1) the similarity of the marks; (2) the defendant's intent; (3) and evidence of actual confusion. *Id.*; *see also Ty*, 237 F.3d at 897-98. In determining whether to grant a preliminary injunction, the court "must weigh the evidence pertaining to each likelihood of confusion factor and balance the seven factors against each

---

while actually doing business under the assumed name Solo 1530. Defendants' incorporation of an entity named Yolk, Inc. that then did business under the name Solo 1530 is neither evidence nor proof that Defendants first used the word "yolk" in commerce in the relevant market.

other." *Barbecue Marx*, 235 F.3d at 1044. A preliminary injunction is a powerful remedy "never to be indulged in except in a case clearly demanding it." *Id.* (citations omitted).

1. Similarity Between the Parties' Marks in Appearance and Suggestion

Plaintiffs argue that the name New Yolk New Yolk is similar to and infringes upon its Yolk mark because New Yolk New Yolk uses the word "yolk" in its name and is substantially similar to Yolk's mark. In determining the similarity of the marks, a court should make the comparison between the two marks in light of what happens in the marketplace, not necessarily by looking at the two marks side by side. *Ty*, 237 F.3d at 898. Not only will the consuming public encounter a mark in written form but consumers also will hear the words spoken. In the restaurant services industry, there is no doubt that consumers are exposed to a trademark through word of mouth, and therefore, it is appropriate to look at the aural similarities as well. *Lettuce Entertain You*, 2010 WL 748169, at * 4.

In this case, we find that Yolk and New Yolk New Yolk are both visually and aurally dissimilar. Plaintiffs argue that the marks are similar in suggestion because both restaurants utilize the word "yolk" in their name. Plaintiffs, however, do not have the exclusive use of the word "yolk" in everyday speech or commerce. Further, Plaintiffs clearly are using the word "yolk" as in the yellow part of an egg while Defendants clearly are using the word "yolk" for their aural and visual parody on New York City.

New Yolk New Yolk does not infringe upon Yolk simply because New Yolk New Yolk uses the word "yolk" in its name. In comparing Yolk side by side with New Yolk New Yolk, it is clear that the marks are visually dissimilar. Plaintiffs' mark is comprised of the word "yolk" surrounded by the outline of an egg. The word "yolk" is written in black and the center of the

"o" is yellow. In contrast, the sign for New Yolk New Yolk has the word "new" in white and the word "yolk" in yellow, and there are white and yellow stars above the name of restaurant. The words run together without spaces in between them – i.e., NewYolkNewYolk – alternating white and yellow text for each word. By pushing the words in this phrase together without spaces, Defendants associate the name of their restaurant with "New York, NewYork" rather than, as Plaintiffs contend, attempting to call their restaurant a new "Yolk." In addition, the typeface used by Plaintiffs and Defendants in their signage and marketing is different. Defendants' sign also indicates that New Yolk New Yolk is "by Eggstacy," clearly showing its affiliation with Defendant Eggstacy LLC and Defendants' two other restaurants by that name in the western suburbs. Hearing Tr. at 24.

Moreover, aurally, it is clear that New Yolk New Yolk is intended to evoke a reference to New York City and is not suggestive of the egg-related imagery conjured by Yolk. The name New Yolk New Yolk clearly is a parody of New York City in the State of New York (i.e., New York, New York) and the famous song "New York, New York" by Frank Sinatra. Parody strongly contributes to dispelling confusion. *Universal City Studios Inc. v. Nintendo Co.*, 746 F.2d 112, 116 (2nd Cir. 1984). We find Verros' testimony credible that he used the word "yolk" in New Yolk New Yolk for its aural similarity to a version of the word "York" and in order to complete the parody of New York City. Hearing Tr. at 21-23. Verros testified that he came up with the idea for a New York City-themed restaurant in part because there is not any street access to the site he chose for his restaurant in Hinsdale, Illinois. *Id.* at 21-22. He testified that customers must enter New Yolk New Yolk through an alley or gang-way similar to the way patrons access many restaurants in New York City down a side-street or alley-way. *Id.* at 22-23.

11

The record demonstrates that New Yolk New Yolk is a New York City-themed restaurant in many ways. *See generally* Defs' Resp.[Dkt.#26], Ex E. Its internal decor includes murals and painting depicting cartoon-like images of the Statue of Liberty with an egg face, the Empire State Building, and the New York City skyline with eggs riding the subway against the skyline background. Its employees even wear t-shirts that say "I ♥ NY." *Id.* at 22-23. Kastanis admitted at the hearing that although he had never been inside New Yolk New Yolk, based on the pictures he had seen of New Yolk New Yolk, it is a New York-themed restaurant and that Yolk does not have any such theme. Hearing Tr. at 66.

Plaintiffs also argue that people may not refer to Defendants' restaurant as New Yolk New Yolk in everyday conversation and are more likely to refer to it simply as "New Yolk," thus increasing the likelihood of confusion. Pls' Reply [Dkt.#30], at 15. This is not persuasive. Defendants have no control over how consumers may or may not refer to their restaurant, and we must compare the names actually chosen by the parties and used by them in their businesses. There is no evidence that Defendants are advertising or marketing their restaurant as "New Yolk" or that they are encouraging this truncation of their chosen name. Verros testified that the name of his restaurant is New Yolk New Yolk and not simply New Yolk. Hearing Tr. at 21. Further, as noted earlier, Defendants' signage and marketing runs the phrase New Yolk New Yolk with the words pushed together which encourage customers to run all four words together in referring to the restaurant. There is no evidence to support the speculation that consumers will artificially shorten the name New Yolk New Yolk and simply refer to the restaurant as "New Yolk" as Plaintiffs contend.